

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Travis Co*

Honorable M. O. Flowers
Secretary of State
Austin, Texas

Dear Sir:

Att'n: Mr. Will Mann Richardson

Opinion No. O-2536
Re: Computation of filing fee, under
Article 3914, for the renewal of
a foreign permit with respect to
the terms "the gross assets employed
in whole or in part in intrastate
business in Texas" and "the gross
receipts from intrastate Texas
business".

Your letter of recent date states that the American Republics Corporation, a Delaware Corporation, has a permit to do business in Texas and is seeking a renewal of such permit. You further state that this corporation is a holding corporation and holds stock in various corporations, Texas and foreign, doing a part or all of their business in Texas. In connection therewith you propound the following questions:

Whether in the computation of the filing fee incident thereto under Article 3914, Revised Civil Statutes of Texas, (1) the ownership of stock by this foreign holding corporation in Texas corporations doing business in Texas, and in foreign corporations doing business in Texas, are to be considered as "gross assets employed in whole or in part in intrastate business in Texas; and (2) whether the income or dividends paid by such corporations to the American Republics Corporation are to be considered as "gross receipts from intrastate Texas business".

The pertinent provisions of Article 3914 provide as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. M. O. Flowers, page 2

"Upon obtaining a permit under Article 1529
and upon filing a certified copy of any amendment
or supplement under Article 1537, each foreign
corporation shall pay the following fees for the
privilege of being admitted to do an intrastate
business in this State: Fifty ($50.00) Dollars
for the first Ten Thousand ($10,000.00) Dollars
of its issued capital stock employed in Texas,
as hereinafter determined, and Ten ($10.00) Dol-
lars for each additional Ten Thousand ($10,000.00)
Dollars or fractional part thereof. The amount
of the issued capital stock so taxable shall be
that proportion of the whole thereof, as the
gross assets employed in whole or in part in
intrastate business in Texas, plus the gross re-
ceipts from intrastate Texas business, bear to
the entire assets and receipts of the corpora-
tion . . . ."

We are not concerned with the question of wheth-
er the American Republics Corporation has transacted, or
is transacting, or will transact intrastate business in
Texas inasmuch as the corporation has had a permit to do
so and is applying for a renewal permit to do so, the
granting of which by the State will confer upon the cor-
poration such right and privilege without qualification
or restriction. The question before us therefore becomes
merely the determination of such of its assets and such
of its receipts as may properly be considered in comput-
ing the renewal filing fee under the formula set out in
Article 5914.

We point out, as later discussed more fully,
that the fee imposed by Article 5914 is in the nature of
an entrance or admission fee - it is not a tax upon the
property of the corporation.

We do not regard the physical location or the
situs of the stock certificates, or the domicile of the
American Republics Corporation, as controlling. NATIONAL
LEATHER CO. v. MASSACHUSETTS, 277 U.S. 413. Nor do we
think it can be gainsaid that the capital stock owned by
the American Republics Corporation in other corporations

Hon. M. O. Flowers, page 3

represents its "assets". BARRIE v. UNITED RAILWAY CO., 138 Mo. Appeals 557, 119 S.W. 1020, 1056. And that the income or dividends received from the stock so owned constitute "receipts" of the corporation.

In the purchase of stock in other corporations the holding corporation employs its capital in the precise way contemplated by the incorporators. Where a corporation thus devotes its capital stock to the very purpose for which it was formed, it will hardly do to say that such stock is not employed. WACLARK REALTY CO. v. WILLIAMS, 196 N.Y. 54, 91 N.E. 266, 46 L.R.A. (New Series) 371.

"Acts in conformity to, and in furtherance of the sole business purpose of a going concern undoubtedly represent 'doing business' . . . ." Appeal of Callery, 272 p. 255, 116 Atl. 222.

The case of MANHATTAN SILK CO. v. MILLER, 125 Appellate Division 296, 109 N.Y. Supp. 968, affirmed 197 N.Y. 577, 91 N.E. 1119, involved a statute subjecting to a license tax every foreign corporation doing business in the State, to be computed upon the basis of the capital stock employed by it within the state, and further providing that the capital of a corporation invested in the stock of another corporation should be deemed to be assets located where the physical property represented by such stock was located. It was held that in determining the amount of license tax to be paid by a foreign corporation doing business within the State, one of the purposes of which was to hold the stock of a domestic corporation, money invested by it in the stock of the domestic corporation could be included. The court declared in its opinion:

"The relator complains that the money invested in the stock of other corporations was not taxable, but was simply an investment. Inasmuch as this was one of the purposes of the corporation, however, we have held that such an investment is taxable. North American Company v. Miller, 90 Appellate Div. 550, 86 N.Y.

Hon. M. O. Flowers, page 4

supp. 386, affirmed 182 N.Y. 521, 74 N.E. 1124. It is further contended, inasmuch as this company was not doing business for a profit, that the capital was not employed within the state. That contention is not good here because they were doing business for a profit. They took their profit through their dividends in the corporation in which they held the stock * * *."

Invoking this same principle, Mr. Justice Holmes points out in EDWARDS v. CHILE COPPER CO., 270 U.S. 452, 46 S. Ct. 345, 70 L. Ed. 678:

"If the corporation was one which congress has power to tax in this way, it is hard to say that it is not within the taxing act. It was organized for profit and was doing what it principally was organized to do in order to realize profit (to hold stock in another corporation). The cases must be exceptional when such activities of such corporation do not amount to doing business in the sense of the statute. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the end for which the corporation was organized, in the cases where the end is profit * * *. <u>There was some suggestion that there was only one business and therefore ought to be only one tax.</u> But if the one business could not be carried on without two corporations taking part in it, each must pay, by the plain words of the act * * *." (Parenthetical insertion and emphasis ours).

In NATIONAL LEATHER CO. v. MASSACHUSETTS, 277 U. S. 413, 72 L. Ed., 935, 48 S. Ct. 534, there was involved a law of Massachusetts which imposed an excise on foreign corporations for the privilege of carrying on or doing business in the State, at a fixed rate per $1,000.00 upon such proportion of the fair cash value of all the shares constituting the capital stock of the corporation, as the value of the assets, real and personal, employed in business within the State bears to the value of its total

assets. The National Leather Company was a Maine Corporation engaged in the business of purchasing hides and skins, having them tanned by other companies and selling the leather through the tanners. It operated no tanneries itself. The business of the company was conducted wholly in Massachusetts and among other properties it owned the entire capital stock, except a few qualifying shares, of two other Maine Corporations which tanned leather for the National Leather Company. One of the companies, in addition to its principal business in Massachusetts, was qualified to do business and had selling branches in four or five other states; the second company being engaged in business only in Massachusetts.

The tax commissioner included all the capital stock of the two subsidiary companies as part of the assets employed by the National Leather Company in business within Massachusetts. The National Leather Company contended that the inclusion of these stocks as part of the assets employed by it in business in Massachusetts was unlawful as being in effect the imposition of a tax upon the stocks themselves, that these stocks, as distinguished from the assets of the subsidiary corporations, had no situs in Massachusetts and were not within its jurisdiction, and that the statute, so applied, was beyond the power of the State and violated the due process clause of the Fourteenth Amendment to the United States Constitution.

Mr. Justice Sanford, in delivering the opinion of the United States Supreme Court, declared:

"For present purposes it may be assumed that the capital stocks of the two subsidiary companies had no situs in Massachusetts which brought them within the jurisdiction of that State for the purpose of imposing a direct property tax. * * * . But here the statute does not impose any direct tax upon these stocks and, as construed by the Massachusetts court, merely treats them as assets employed by the petitioner in its business within the State, and therefore requires that they be included when the total assets so employed by it are

Hon. M. O. Flowers, page 6

computed for the purpose of arriving at the pro-
portionate part of the value of its own capital
shares - determined by comparing the assets em-
ployed in business within the State with the total
assets wheresoever employed or located - on which
the excise for the privilege of carrying on its
business within the state is imposed. * * * *

"Here both the commissioner, the administra-
tive officer charged with the enforcement of the
statute, and the Massachusetts Court have found
that the capital stocks of the two subsidiary com-
panies were employed by the petitioner in carry-
ing on its business within Massachusetts. We
find no adequate reason for disturbing this con-
clusion. On the contrary, looking to the substance
of the transactions and not merely to form, we
think that the petitioner, through its ownership
of the capital stocks of the two subsidiary cor-
porations and the control which it thereby exer-
cised over them, did, in a very real and practical
sense, employ these stocks as an instrumentality
in carrying on its business within Massachusetts
- to the extent, at least, that the controlled
activities and property of the subsidiary corpor-
ations were within the state. * * * ."

It must be recognized in this connection that the
fee imposed by Article 5914 is in the nature of an entrance
fee - it is not a tax upon the property of the corporation.
This important distinction is recognized by the United
States Supreme Court in the case of ATLANTIC REFINING CO.
v. VIRGINIA, 302 U. S. 22, 83 L. Ed. 24, 58 S. Ct. 75,
wherein Mr. Justice Brandeis in deliving the opinion of
the court, declared:

"It is contended that a statute which meas-
ures the entrace fee solely by the authorized
capital deprives the corporation of its property
without due process, because the amount is deter-
mined by reference to property beyond the taxing
jurisdiction; and also that this charge is an
arbitrary taking of property. As has been shown,
the amount of the entrance fee is not measured by
property, either within or without the jurisdic-

Hon. M. O. Flowers, page 7

tion; and it is not a tax upon property. It is
payment for an opportunity granted.. * * *. The
value of the privilege acquired is obviously de-
pendent upon the financial resources of the cor-
poration - not only upon the capital possessed
at the time of its admission to do business, but
also upon the capital which it will be in a pos-
ition to secure later through its existing author-
ity to issue additional stock. Obviously, the
power inherent in the possession of large finan-
cial resources is not dependent upon, or confined
to, the place where the assets are located. * * *
Great power may be exerted by the company in Vir-
ginia although it has little property located
there. And the value to it of the privilege to
exert that power is not necessarily measured by
the amount of the property located or by the amount
of the local business done, in Virginia. More-
over, it is immaterial whether the opportunity
is availed of or not. The state grants a large
privilege. It may demand a corresponding price.
* * * ."

"The difference in the powers of a state over
entrance fees and taxes was pointed out in Han-
over Fire Ins. Co. v. Harding, 272 U.S. 494, 510,
511: 'in subjecting a law of the state which
imposes a charge upon foreign corporations to the
test whether such a charge violates the equal pro-
tection clause of the Fourteenth Amendment, a
line has to be drawn between the burden imposed
by the state for the license or privilege to do
business in the state, and the tax burden which,
having secured the right to do business, the for-
eign corporation must share with all the corpor-
ations and other taxpayers of the state. With
respect to the admission fee, so to speak, which
the foreign corporation must pay, to become a
quasi citizen of the state and entitled to equal
privileges with citizens of the State, the meas-
ure of the burden is in the discretion of the
state * * *'".

Finally, it is pointed out in this case in reply
to the contention that a fee measured solely by the amount

Hon. M. O. Flowers, page 8

of the corporations authorized capital stock necessarily burdens interstate commerce:

"Authorized capital has no necessary relation to the property actually owned or used by the corporation; furthermore, the fee for which it is the measure respresents simply the privilege of doing a local business. Because the entrance fee does not represent either property or business being done, it is immaterial that in fixing its amount no apportionment is made between the property owned or the business done within the state and that owned or done elsewhere."

The same distinction is recognized in the case of INTERNATIONAL SHOE CO. v. SHARTEL, 279 U.S. 429, 73 L. Ed. 781, 49 S. Ct. 380, wherein it is declared:

"The assignment to the shares of a value in excess of their present worth or of a present value of the assets within the state does not operate to tax property or business without the state. The tax is a privilege and not a property tax. * * * ."

The Supreme Court in the case of FORD MOTOR CO. v. BEAUCHAMP 84 L. Ed. 250 (decided Dec. 11, 1939) declared through Mr. Justice Reed:

"For this reason it is held that an entrance fee may be properly measured by capital wherever located. The weight, in determining the value of the intrastate privilege, given the property beyond the state boundaries is but a recognition of the very real effect its existence has upon the value of the privilege granted within the taxing state."

We recognize, of course, that ownership of stock by a corporation in another corporation transacting intrastate business in Texas may be of such a character as not to constitute the doing of intrastate business within Texas by the holding corporation. This goes, however, to the necessity of the holding corporation having a permit from the state and is obviated by the application

Hon. M. O. Flowers, page 9

for and the receipt of a permit to do business in Texas
by the holding corporation. We can only assume, there-
fore, that the American Republics Corporation, since it
has applied for and will receive the state's permit, will
employ all of its assets, to-wit, stock in domestic and
foreign corporations operating in Texas, in the manner au-
thorized by the permit it has applied for and will receive.
As said by Mr. Justice Brandeis in the Atlantic Refining
Company case, supra:

    " * * * . Moreover, it is immaterial whether the
    opportunity is availed of or not. The state grants
    a large privilege. It may demand a correspond-
    ing price. * * * ."

    It is therefore the considered opinion of this
department that in the computation of the filing fee under
Article 3914, incident to the application of the American
Republics Corporation for a permit to transact business
in Texas, the stocks owned and held by the corporation in
Texas corporations doing business in Texas, and in for-
eign corporations doing business in Texas, attributable
to that part of their business and property in Texas, may
be considered as "gross assets employed in whole or in
part in intrastate business in Texas" by the American Re-
publics Corporation.

    Likewise, the income or dividends paid to the
American Republics Corporation by these corporations, at-
tributable to that part of their business transacted in
Texas, may be considered as "gross receipts from intra-
state Texas business", under Article 3914.

                    Yours very truly

              ATTORNEY GENERAL OF TEXAS

              By
                 Zollie C. Steakley
                      Assistant

APPROVED SEP 6, 1940

ZCS:ob

    Gerald C. Mann

    ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE